UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAPPY'S PIZZA FRANCHISE, LLC, and
HAPPY'S PIZZA #13, INC.,

        Plaintiffs,

v.

PAPA'S PIZZA, INC., a Michigan
corporation, and PHIL ALMAKI, an
individual,

        Defendants.
_____/

CASE NO. 10-15174

HON. MARIANNE O. BATTANI

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OVERRULING DEFENDANTS' OBJECTIONS

This matter is before the Court on Plaintiffs Happy's Pizza Franchise, LLC and Happy's Pizza #13, Inc.'s (collectively referred to as "Happy's") Motion for Partial Summary Judgment (Doc. 34). Happy's contends Defendants Papa's Pizza and Phil Almaki wrongfully infringed on the trade dress of, and engaged in unfair competition against, Happy's Pizza. Defendants dispute Happy's claims and submitted objections to the Magistrate Judge's order to compel production of certain discovery materials. (Doc. 48). For the reasons stated below, the Court **DENIES** Happy's motion and **OVERRULES** Papa's objections.

    **I.    STATEMENT OF FACTS**

        **A.    Background**

This case arises out of a dispute between Happy's Pizza Franchise, LLC, founded by Happy Asker, and Papa's Pizza, Inc., founded by Phil Almaki. Both identify

themselves as "fast food type pizza restaurants" with an expansive menu, including wings, chicken, seafood, ribs, pasta, etc. (Doc 34 at 2). Asker opened the first Happy's restaurant on April 4, 1996. (Doc. 1 at 3). Papa's Pizza incorporated on August 24, 2005. (Doc. 44 Ex. G). Happy's Pizza Franchise, LLC was organized on August 28, 2006. (Id.) Happy's asserts it owns numerous intellectual property rights; sublicensing them to each individually owned restaurant via franchise agreement. (Id.)

In October 2005, Phil Almaki invested in Happy's Pizza #13 as a shareholder. (Doc. 34 at 4). In the process, he signed a non-compete agreement prohibiting him from opening a pizza restaurant within five miles of any Happy's restaurant for two years after his departure from Happy's. (Id.) Almaki claims he was merely a "silent investor," and never involved in any of the operations of the franchise. (Doc. 44 Ex. B, ¶ 6). Almaki also claims he owned two restaurants prior to signing the non-compete agreement: Primo's Pizza established in 2000 (renamed Papa's in August 2005), and another Papa's Pizza in August 2005. (Doc. 44 Ex. B, ¶ 4). In July 2007, Almaki sold all his shares in Happy's Pizza #13. (Doc. 34 at 5). Subsequently, Happy's claims Almaki opened up numerous Papa's Pizza restaurants in close proximity to Happy's restaurants. However, Happy's primary claim is that Papa's copied the design of its restaurants and use of Happy's expansive menu.

### B. Similarities Between Happy's and Papa's

#### 1. Restaurant Design

Happy's asserts it employs "Unique Décor Protocols" that distinguish it from other restaurants. (Doc. 34 at 3). It further asserts that Papa's copied these protocols in

successive restaurants after Almaki sold his shares of Happy's stock.  These "Unique Décor Protocols" include:

 (1) Granite countertops and tabletops

 (2) Ceramic tiled walls and faux-Venetian plaster finished walls

 (3) Extensive neon lighting

 (4) Ceramic floors

 (5) Large back-lit menu with faux-Venetian plaster walls

 (6) Large, black industrial-style rugs

 (7) Back-lit pictures of menu items

 (8) Stainless steel shelving units behind the service counter

 (9) Stacks of pre-folded pizza boxes and large coin-operated candy and bubble gum dispensers

(Doc. 34 at 3-4).  Happy's claims this provides a "uniform look and feel which customers associate exclusively with Happy's Restaurants."  (Id. at 4).  Papa's also uses most, if not all, the above elements in at least one of their locations.  (Doc. 34 Ex. 11).  Papa's asserts that those items were purchased from the prior owner of the location, Smiley's Pizza, without intent to resemble Happy's.  (Doc. 44 Ex. B, ¶ 17).  Some of Papa's other locations are black, red, and white.  The East Lansing Papa's is green and white.  (Id.)

    **2.**  **Menu**

In addition to restaurant design, Happy's asserts Papa's uses the same menu, offers the same food combinations, and uses the same recipes as Happy's.  (Doc. 34 at 6).  Happy's asserts its menu is part of its initiative to "create a distinctive, commercial impression unique to Happy's Restaurants."  (Id. at 2).  Papa's asserts it uses its own proprietary recipes for its food.  (Doc. 44 Ex. B, ¶ 7).  Although the menus are

stylistically similar and offer nearly the same items in the same combinations, each item is described generically.

### C.     Customer Confusion

Last, Happy's asserts Papa's creates customer confusion by using the same products, employees, recipes, vendors, and marketing channels as Happy's. (Doc. 34 at 8). Specifically, Happy's asserts Papa's uses the same printing company to prepare their ads and menus, the same channels of advertising in the local newspaper or local radio station, and distribute similar flyers to households. (Id. at 8-9). Happy's also accuses Papa's of soliciting their employees, and claims customers bring Papa's restaurant menus into Happy's restaurants to place orders. (Id. at 10).

### D.     Complaint

Happy's filed a 60-page complaint in this Court on December 30, 2010. The Complaint alleged trade dress infringement and unfair competition under Section 43 of the Lanham Act. See 15 U.S.C. § 1125(a). It also alleged common law claims of trade dress infringement, unfair competition, and breach of contract. Happy's moved for partial summary judgment on their claims of trade dress infringement and unfair competition under Section 43 of the Lanham Act.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52,

(1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

### III. ANALYSIS

#### A. Trade Dress Infringement

Section 43(a) of the Lanham Act creates a "federal cause of action for infringement of marks and trade dress that have not obtained federal registration." Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760-61 (6th Cir. 2005); 15 U.S.C. § 1125(a). Trade dress is the total image of the product, including all of its identifying characteristics such as size, shape, package, and sales techniques, which make it

5

distinguishable from other products in the market. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n.1 (1992); see also Ferrari S.P.A. Esercizio Fabriche Automibili E Corse v. Roberts, 944 F.2d 1235, 1238-39 (6th Cir. 1991). In order succeed on a claim of trade dress infringement under Section 43(a), a plaintiff must prove: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 629 (6th Cir. 2002).

          1.      Distinctiveness

Distinctiveness of trade dress may be inherent or demonstrated by secondary meaning. Id. at 635. Trade dress is inherently distinctive when its "intrinsic nature serves to identify a particular source." Id. It acquires secondary meaning when, "'in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself.'" Id. (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)). Under the Abercrombie & Fitch test formulated by the Second Circuit, trade dress involving product packaging is inherently distinctive when it is "arbitrary ('Lucky Strike cigarettes'), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent')." Id. (citing Abercrombie & Fitch Co., v. Hunting World, Inc., 537 F.2d 4, 10-11 (2d Cir. 1976). In contrast, trade dress that is descriptive or generic is not inherently distinctive. Id. at 636. Although descriptive trade dress receives protection if it acquires secondary meaning, generic trade dress cannot. Id. The Supreme Court held the Abercrombie & Fitch test applies only to product packaging

trade dress. Best Cellars, Inc. v. Wine Made Simple, Inc., 320 F. Supp. 2d 60, 70 (S.D.N.Y. 2003). The "interior décor category fits awkwardly into the classifications of trade dress law, constituting either product packaging or a '*tertium quid*' akin to product packaging." Id. (citing Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 215 (2000)). Therefore, the Abercrombie & Fitch test applies to the instant case.

Happy's offers only one theory of distinctiveness: their trade dress is inherently distinctive based on their arbitrary use of each element constituting the décor. In support, Happy's asserts the overall image of their restaurants is similar to the "total effect" of the wine stores in Best Cellars, Inc. v. Wine Made Simple, Inc., 320 F. Supp. 2d 60 (S.D.N.Y. 2003). In Best Cellars, the defendants allegedly copied the design of a unique wine retailer that displayed each variety of wine by taste category. Id. at 70. The store displayed the wine in vertical rows of nine with a display bottle on top, a technique never before utilized by wine retailers. Id. Trade magazines described the design and technique as "radically new" and "the most original approach to selling wine," which the court found inherently distinctive. Id. at 66.

Happy's reliance on this case is misplaced. Unlike Best Cellars, Happy's failed to provide evidence that each Happy's restaurant uses this specific uniform theme, that other fast food restaurants do not use these elements, that customers exclusively associate these elements and menu items with Happy's, that other restaurants do not offer similar food combinations, and that all of Papa's restaurants use these elements. Papa's claims only one of its restaurants uses similar elements to Happy's. Papa's is also correct in its assertion that many other fast food chains use similar elements in the design of their restaurants. There is no evidence Happy's combination of these

7

elements, including their menu, is original in design similar to the store in Best Cellars. Moreover, although the menu items offered by each restaurant are substantially similar, there are no trademarked names of menu items used. All combinations and menu items are described generically, i.e., "Perch and Shrimp Combo." Happy's is certainly not the first fast food restaurant to offer such menu items.

Happy's also relies on Katiroll Co., Inc. v. Kati Roll and Platters, Inc., 2011 WL 346502 (D.N.J. 2011). In Katiroll, the court found a substantial likelihood of success on the merits for plaintiffs' request for a preliminary injunction preventing use of plaintiff's trade dress. Id. at * 10. Its decision was based on the defendant using the same interior décor as plaintiffs: burnt orange and white color schemes, exposed red brick walls, 12" brown tile floor, and substantially similar orange signs with white lettering including some form of the word "Katiroll." Id. at * 9. Unlike the case at hand, the evidence involving infringement of trade dress in Katiroll is far more substantial. Happy's claims their trade dress is comprised of the expansive menu, granite countertops, black industrial style rugs, back-lit signage, neon signage, steel shelving, stacked pizza boxes, and ceramic tiled floors and walls. Although the decision to use these generic elements may be arbitrary, it does not create a unique and identifiable trade dress established in Best Cellars or Katiroll. There is an important distinction between arbitrarily selecting design elements that result in a unique and distinctive trade dress and arbitrarily selecting elements that result in nothing more than a generic design. The former demonstrates a unique theme in order to distinguish the end product; the latter results in general overhead cost of doing business. The plaintiffs in Best Cellars used elements to create a unique way of displaying and describing wine

through use of unique elements. Here, Happy's used generic elements to create a fast food restaurant setting otherwise indistinguishable from any others. Without the use of Happy's name and logo within the design or on the menu, there is nothing that would alert the average consumer that they are in a Happy's restaurant. Thus, Happy's trade dress is generic and it has failed to provide sufficient evidence to establish this element.

### 2.  Functionality

Happy's must also demonstrate that its trade dress is primarily nonfunctional. Trade dress is functional when "'it is essential to the use or purpose of the device or when it affects the cost or quality of the device.'" Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 165 (1995) (quoting Inwood Labs., 456 U.S. at 850 n.10). In cases of aesthetic functionality, the "comparable alternatives" test and the "effective competition" tests are used. Abercrombie & Fitch, 280 F.3d at 642. The comparable alternatives test deems trade dress functional if there are no other alternatives to accomplish the same desired features. Id. The effective competition test deems trade dress functional if it hinders the ability of other businesses to compete in the market. Id.; See Two Pesos, 505 U.S. at 768.

The case at hand is similar to Rally's, Inc. v. Int'l Shortstop, Inc., 776 F. Supp. 451 (E.D. Ark. 1990). The court in Rally's concluded that Rally's combination of its logo, red "ribbon of quality" around the building, use of beige-colored paint, and its red back-lit canopy was insufficient to qualify as protectable trade dress. Id. at 458. Although the logo and possibly the ribbon of quality were non-functional, the remaining elements were "common components to other restaurants' trade dress." Id. at 455. Similar to Rally's, Happy's asserts its expansive menu, black industrial style rugs, granite

9

countertops, back-lit images and menu, ceramic-tiled walls and floors, stainless steel shelving, and stacked pizza boxes are nonfunctional because the total package is unique to Happy's restaurants.  However, Happy's failed to provide evidence that these elements are not commonly used in the industry.  It also failed to show that there are other alternatives for Papa's to use in conducting its business or provide any evidence that protecting the trade dress would not hinder competition.  Considering the elements as a whole, this total package is common to the fast food industry.  Happy's has not provided sufficient evidence to establish this element.

### 3. Customer Confusion

In examining the likelihood of customer confusion, the Sixth Circuit weighs several factors including: 1) the strength of the plaintiff's trade dress, 2) relatedness of the goods, 3) similarity of the trade dress, 4) evidence of actual confusion, 5) marketing channels used, 6) likely degree of purchaser care, 7) defendant's intent in selecting the trade dress, and 8) likelihood of expansion of the product lines.  Abercrombie & Fitch, 280 F.3d at 646.

In support of customer confusion, Happy's provided the affidavit of John Naemi, a manager of a Happy's restaurant.  An analysis of each element of the test is unnecessary because this evidence alone is insufficient to satisfy Happy's burden.  The affidavit merely states, "[c]ustomers have frequently expressed confusion over the phone and in person to me . . . between [Happy's] and a Papa's Pizza Restaurant [in close proximity] to [Happy's]."  (Doc. 34 Ex. 10).  It also states customers "asked" about a new Happy's restaurant and brought in pizza advertisements from Papa's.  (Id.)  No customer statements are provided.  No particularity regarding the confusion is provided.

It does not state that the customers were confused based on the similarity of the décor, menu, location, etc. of the two restaurants. See Rally's, 776 F. Supp. at 457 (holding statement of employees that customers were confused regarding the two restaurants is insufficient to establish the likelihood of confusion element). In addition, the mere fact that two competing restaurants in the same geographic area utilize the same marketing channels and employ the same companies to market their product is insufficient. Therefore, Happy's has not provided sufficient evidence that would entitle them to summary judgment on this element.

### B. Unfair Competition

Happy's also accuses Papa's of unfair competition. Section 43 of the Lanham Act provides a federal cause of action for unfair competition. See 15 U.S.C. § 1125(a); see also Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 604 (6th Cir. 1991). "[L]ikelihood of confusion is the essence of an unfair competition claim and [ ] the same factors are considered." Id. In examining the likelihood of confusion, the Sixth Circuit uses the same test required to establish the element of customer confusion for a trade dress infringement claim. See Abercrombie & Fitch, 280 F.3d at 646.

The Court has already concluded Happy's failed to establish the customer confusion element of its trade dress claim. Thus, the same result is required for its unfair competition claim. See Mktg. Displays, Inc. v. TrafFix Devices, Inc., 200 F.3d 929, 932 (6th Cir. 1999) ("[federal] unfair competition claim turns on the same evidence as its trademark and trade dress claims") *rev'd other grounds*, 532 U.S. 23 (2001). Consequently, Happy's is not entitled to summary judgment on this claim.

### C. Objections to Magistrate Judge's Order

During discovery, Happy's requested information regarding Papa's tax returns, profits, sales figures, ownership, and recipes used by Papa's for their menu items. Magistrate Judge Majzoub entered an order compelling Papa's to produce this information after they failed to provide good cause for their tardiness. Papa's objected to the order claiming the requests are unduly burdensome and harassing. However, during the hearing, Happy's withdrew its request for Papa's recipes. Thus, Papa's need not produce its recipes to comply with the Magistrate Judge's order.

Regarding sales figures, tax returns, and ownership, the Magistrate Judge found the information relevant and that Papa's failed to provide good cause for their late responses and objections to Happy's discovery requests. (Doc. 47 at 3). The Magistrate Judge also found Papa's objections were incomplete or comprised of boilerplate objections. See (Doc. 48 at 3) ("Lack of relevance was therefore an appropriate objection and not boilerplate."). Objecting to discovery by citing a lack of relevance without specific factual support is insufficient. As the Magistrate Judge noted, "[o]bjections that are boilerplate in nature are tantamount to no objection at all." (Doc 47 at 2) (citing Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999)). Consequently, Papa's objections to the Magistrate Judge's order compelling production are overruled.

### 4. CONCLUSION

Accordingly, because Happy's failed to provide sufficient evidence to establish the essential elements of its claims, its motion for partial summary judgment is **DENIED**.

It is **FURTHER ORDERED** that Papa's objections to the Magistrate Judge's order are **OVERRULED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani<br>MARIANNE O. BATTANI<br>UNITED STATES DISTRICT JUDGE

DATE: January 25, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon all parties of record, electronically.

s/Bernadette M. Thebolt<br>Case Manager